# Rocco v. Hirsch

*R. H. Arronson*, for plaintiff.

*David Kanner* and *George Williams, 3rd*, for defendant.

*Robert Boyd, Jr.*, for additional defendant.

FLOOD, P. J., October 13, 1960.—These cases arose from the sale of a restaurant and taproom to plaintiff, Rocco, through defendant, Oscar Hirsch, as agent for the vendor. In prior litigation against the vendor,

plaintiff obtained rescission of the sale on the ground of fraudulent misrepresentation: Rocco v. Musso, C. P. 6, March term, 1957, no. 2418. He then brought this action in tort against the agent alleging fraudulent misrepresentation and fraudulent concealment and seeking damages for which he was not compensated in the prior suit. Defendant denied any liability and brought in Musso, the vendor, as his principal, as an additional defendant, asserting that, if liability exists, Musso is alone liable or jointly liable with the original defendant. Additional defendant counterclaimed against Hirsch, asserting that the latter is liable to him for losses resulting from the prior litigation and for the commission paid to him for making the sale.

Prior to December 9, 1956, Frank Musso was the nominal owner of all of the stock of a Pennsylvania corporation, The Rathskeller, Inc., which operated the restaurant and taproom involved here at 8300 Bustleton Avenue, in Philadelphia. Joseph Bodnick, Musso's stepson, was the real owner of the stock and the manager of the business. Prior to December 9, 1956, Joseph Bodnick engaged defendant, Oscar Hirsch, as a broker, to obtain a buyer for the Rathskeller Corporation and its business. On December 9, 1956, Oscar Hirsh had the following advertisement published in the Philadelphia Inquirer:

"Taprm. Vic Castor & Bustleton. Prove $1200 bar, mod air-cond. Colored TV. Parking facilities. Illness. $15,000. reqd. PROGRESS BUS. BROKERS Open Monday until 9 P M 2404 N Broad St. SA 2-3272."

Plaintiff, having seen the advertisement, spoke to Hirsch, received the necessary information and said he was going down to see the place. He refused to agree that defendant go with him on these visits. Thereafter plaintiff made several visits to the tap-

room. looked at the bills and talked to Bodnick. Plaintiff says he must have asked Bodnick the amount of business done. ". . . I don't know . . . in my opinion I think I did."

On cross-examination plaintiff said he wanted to see the bills to determine whether Bodnick was purchasing enough liquor to be doing $1,200 per week business, and the bills indicated that he was. He also wanted to see how the business looked.

Bodnick testified that he never told plaintiff that he did about $1,200 of business weekly. He showed him his bills but not his books. He said that his accountant showed him the books, but later retracted this. The accountant was not called as a witness.

1. Plaintiff argues that the words "prove $1200" constitute a representation that the establishment was doing $1,200 weekly business, that it was so understood by defendant and intended by him to be acted upon by plaintiff, and that it thus constitutes a material misrepresentation.

We cannot follow this. Plaintiff did not prove that there was any trade usage to the effect that this phrase means that the taproom does $1,200 weekly business. On the other hand defendant says it means that the seller "will prove" that the business does $1,200. It seems to us that this is what plaintiff took from it. He made several visits to the taproom, looked at the bills and talked to Bodnick the real owner. On cross-examination he said that he thought he asked Bodnick the amount of business done. Bodnick denies this, but Bodnick is an interested witness, being the real owner and the real seller who might make himself liable to plaintiff for damages if he admitted that he misrepresented the amount of business done. Again plaintiff said on cross-examination that he wanted to see the bills to determine whether the operator of the taproom

was purchasing enough liquor to be doing $1,200 weekly business and that the bills indicated that he was. Plaintiff said he also wanted to see how the business looked.

This raises a real obstacle to plaintiff's right to recover. It goes far to validate defendant's contention that the words "prove $1200" did not constitute an assertion by the party who placed the advertisement that $1,200 business was being done but rather that the seller would prove it. It is one thing to hold that this constitutes misrepresentation by the seller, as Judge Levinthal held in Rocco v. Musso, C. P. No. 6, March term, 1957, no. 2418. It is quite another to hold that such a statement constitutes a misstatement by the agent who placed this advertisement in the newspaper, which in effect told the purchaser to investigate and that he would find that the business was $1,200 weekly.

This eliminates the necessary reliance upon defendant who inserted the advertisement and it shows that plaintiff either relied upon his own eyes and his own investigation or on the statements of Bodnick as to the amount of business done.

It also goes far to destroy plaintiff's contention that defendant knew that the statement "prove $1200" was false. If it merely meant that proof would be offered and that the prospective buyer could investigate for himself, we fail to see how that constitutes a misrepresentation by the agent who inserted the advertisement. Nor do we see any obligation under these facts upon that agent to question the veracity of his principal and determine for himself whether or not $1,200 business was being done.

It is difficult for us to see under these circumstances that plaintiff has proved that defendant caused his loss. Under the circumstances we fail to find that

plaintiff has sustained his burden of proving an actionable misrepresentation.

2. Plaintiff also attempted to prove that defendant induced the purchase of the business without revealing that a portion of the property on which the restaurant and taproom stood was shortly to be taken by the City of Philadelphia in exercise of its power of eminent domain. It does not appear from the evidence that at that time the taking was more than a mere possibility. Under the circumstances of this case, including absence of direct inquiry by plaintiff in regard to this matter, it does not seem to us that defendant Hirsch was legally culpable for his failure to disclose what proved no more than vague suspicions.

In view of our decision above mentioned, we need not further consider defendant's complaint against additional defendant, and on such complaint we find against defendant and in favor of additional defendant.

On plaintiff's complaint, we find for defendant and against plaintiff. On additional defendant's counterclaim against defendant, we find for defendant and against additional defendant.